Bronstein v Clements (2019 NY Slip Op 01470)





Bronstein v Clements


2019 NY Slip Op 01470


Decided on February 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 28, 2019

526669

[*1]ANITA L. BRONSTEIN, as Guardian of the Person and Property of SEYMOUR B. BRONSTEIN SR., Respondent,
v
MAHLON T. CLEMENTS, Appellant.

Calendar Date: January 10, 2019

Before: Garry, P.J., Egan Jr., Aarons, Rumsey and Pritzker, JJ.


The Clements Firm, Glens Falls (Thomas G. Clements of counsel), for appellant.
Barclay Damon LLP, Syracuse (Michael J. Balestra of counsel), for respondent.



MEMORANDUM AND ORDER
Aarons, J.
Appeal from an order of the Supreme Court (Farley, J.), entered July 17, 2017 in St. Lawrence County, which granted plaintiff's motion for summary judgment.
Defendant and Seymour B. Bronstein Sr., a physician who resided in Pennsylvania, are personal acquaintances who also had some real estate matters with each other. In 2013, Bronstein took a bus to visit defendant in New York. Due to Bronstein's declining mental health, Bronstein missed his bus stop and lost his briefcase, causing defendant to have to pick him up. Defendant thereafter assisted Bronstein in preparing two powers of attorney. One power of attorney granted unrestricted authority to plaintiff. The other power of attorney was a limited power of attorney appointing defendant as Bronstein's agent and granted him two powers — "[t]o create a trust for [Bronstein's] benefit" and "[t]o engage in real property transactions in New York State" on Bronstein's behalf. Defendant used a Pennsylvania form for both powers of attorney, and Bronstein executed them in New York.
After Bronstein's health continued to decline, plaintiff, based upon the general power of attorney to act on Bronstein's behalf, sent a purported revocation of defendant's limited power of attorney. Notwithstanding the foregoing, defendant continued to engage in real estate transactions on Bronstein's behalf. In January 2016, plaintiff advised defendant that Bronstein suffered from dementia and that defendant's power of attorney had been revoked. Plaintiff subsequently commenced a proceeding in Pennsylvania for plenary guardianship of Bronstein. In May 2016, an order was issued in this Pennsylvania proceeding appointing plaintiff as Bronstein's guardian. Plaintiff then filed a certified copy of the Pennsylvania order in the St. Lawrence County Clerk's office, as well as a revocation of defendant's power of attorney. Plaintiff thereafter commenced this action seeking, among other things, a revocation of the limited power of attorney given to defendant by Bronstein. Following joinder of issue, plaintiff moved for, among other things, summary judgment seeking a declaration that defendant's limited power of attorney was revoked. Supreme Court, among other things, granted plaintiff's motion. Defendant appeals. We affirm.
"The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved" (Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.], 81 NY2d 219, 223 [1993]). Under the Pennsylvania statute in effect at the relevant time, plaintiff could revoke any prior powers of attorney made by Bronstein once she was appointed as his guardian (see 20 Pa Code § 5604 [c] [former (1)]). Meanwhile, under New York law, a guardian may not "revoke an appointment
. . . made by the incapacitated person pursuant to [General Obligations Law §§ 5-1501, 5-1601 and 5-1602]" (Mental Hygiene Law § 81.22 [b] [2]). As such, whether a conflict between New York and Pennsylvania law exists turns on whether the limited power of attorney given to defendant was made, as relevant here, pursuant to General Obligations Law § 5-1501. If so, then a conflict exists; if not, there is no conflict.
General Obligations Law § 5-1501 generally governs powers of attorney. Plaintiff relies on General Obligations Law §
5-1501C (1) and (9), which excludes from General Obligations Law § 5-1501, respectively, "a power of attorney given primarily for a business or commercial purpose" and "a power given to a licensed real estate broker to take action in connection with a listing of real property, mortgage loan, lease or management agreement," among others. To that end, plaintiff maintains that because the limited power of attorney issued to defendant falls into either of these two categories, it does not constitute an appointment made pursuant to General Obligations Law § 5-1501. We disagree. Such document, on its face, does not indicate that it was created primarily for business or commercial purposes. Nor does the record reflect that buying and selling real property was Bronstein's primary business. Indeed, defendant averred in his affidavit that Bronstein owned a house in the Town of Oswegatchie in St. Lawrence County and that he would spend time there. Furthermore, the two powers given to defendant in the limited power of attorney — creating a trust for Bronstein's benefit or to engage in real estate transactions on his behalf in New York — are not powers that are solely reserved for business or commercial purposes. The record also does not indicate that these two powers were given to defendant so that he could take action in connection with a listing of real property, mortgage loan, lease or management agreement. As such, because the limited power of attorney does not fall within the ambit of General Obligations Law § 5-1501C (1) or (9), it is not excluded from General Obligations Law § 5-1501. More to the point, because it is not excluded from General Obligations Law § 5-1501, New York law prohibits plaintiff from unilaterally revoking it (see Mental Hygiene Law § 81.22 [b] [2]). Accordingly, a conflict between Pennsylvania law and New York law exists.[FN1]
"Under established conflict of laws principles, the applicable law should be that of 'the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation'" (Matter of Doe, 14 NY3d 100, 109 [2010], quoting Babcock v Jackson, 12 NY2d 473, 481 [1963]). Defendant, as Bronstein's agent, "must act in the utmost good faith and undivided loyalty toward [Bronstein], and must act in accordance with the highest principles of morality, fidelity, loyalty and fair dealing" (Semmler v Naples, 166 AD2d 751, 752 [1990] [internal quotation marks and citation omitted], appeal dismissed 77 NY2d 936 [1991]). The record discloses that Bronstein was a resident of Pennsylvania, defendant does not dispute that a Pennsylvania form was used to create both powers of attorney, defendant referred to the limited power of attorney as a "Pennsylvania Durable Power of Attorney" and the limited power of attorney noted that the powers granted to defendant were "explained more fully in Pa. C.S. Chapter 56." In view of the foregoing and [*2]taking into account that defendant was required to act for the benefit of Bronstein, we find that Pennsylvania has the greater concern with the dispute at issue and, therefore, Supreme Court correctly granted plaintiff's motion. Defendant's remaining arguments have been examined and are unavailing.
Garry, P.J., Egan Jr., Rumsey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: Although plaintiff, once she registered the Pennsylvania order appointing her as Bronstein's guardian, could "exercise in [New York] all powers authorized in the order of appointment," she could only do so to the extent such powers were not "prohibited by the laws of [New York]" (Mental Hygiene Law § 83.39 [a]). In view of our determination that Mental Hygiene Law § 81.22 (b) (2) prohibits plaintiff from revoking any prior powers of attorney given by Bronstein, plaintiff's reliance on Mental Hygiene Law § 83.39 (a) is unavailing.